IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| MICHELLE CHAMBERLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:10-cv-01510-MO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

MOSMAN, J.,

    Plaintiff Michelle Chamberlin appeals the Commissioner's decision denying her concurrent applications for Disability Insurance Benefits and Supplemental Security Income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

# BACKGROUND

In 1997, Mrs. Chamberlin filed an application for Supplemental Security Income under Title XVI of the Social Security Act, alleging disability beginning April 30, 1996. Admin. R. 8, 30, 99. Mrs. Chamberlin did not file a concurrent application for Disability Insurance Benefits under Title II, although she met the insured status requirements for a Title II claim through September 30, 1997. *Id.* at 30, 83. On February 15, 1998, the Commissioner denied Mrs. Chamberlin's application and she did not request further review. *Id.* at 30, 37.

Mrs. Chamberlin filed her present applications in September 2004, more than six and a half years after the denial of her previous application and seven years after her insured status expired. She again alleged a disability onset date of April 30, 1996, effectively requesting the Commissioner to reopen the previous application and revise the factual determination that she was not disabled through the date of that decision. The administrative law judge ("ALJ") declined to reopen the previous application "pursuant to the application of the doctrine of *res judicata*." *Id.* at 30. Nevertheless, the ALJ considered all the evidence, including evidence related to the previous period, and concluded that Mrs. Chamberlin had not been disabled "from April 30, 1996 through the date of this decision." *Id.* at 41.

On the merits of Mrs. Chamberlin's present claim, the ALJ applied the sequential disability determination process described in 20 C.F.R. §§ 404.1520, 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Mrs. Chamberlin's ability to perform basic work activities limited by bipolar disorder, features of a cognitive disorder, and post traumatic stress disorder ("PTSD"). Admin. R. 32, 34. The ALJ found that despite these impairments, Mrs. Chamberlin retained the residual functional capacity ("RFC") to perform work at all levels of exertion, limited to simple and

routine tasks and work that can be performed while avoiding loud people and crowds. *Id.* at 35. The ALJ elicited testimony from a vocational expert ("VE"), who said jobs exist in the national economy which a person having Mrs. Chamberlin's RFC and vocational factors could perform. *Id.* at 40, 506-09. The ALJ concluded that Mrs. Chamberlin was not disabled within the meaning of the Social Security Act at any time between April 30, 1996 and the date of the decision. *Id.* at 41.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

**I.    Claims of Error**

Mrs. Chamberlin contends the ALJ improperly applied the doctrine of *res judicata* to give preclusive effect to the previous decision of the Commissioner in which he found Mrs. Chamberlin was not disabled from April 30, 1996 through February 15, 1998. On the merits, Mrs. Chamberlin contends the ALJ improperly rejected the opinion of Sally Clayton, Ph.D., the medical expert who testified at her administrative hearing.

**II.    Administrative *Res Judicata***

After Mrs. Chamberlin's previous disability claim was denied at the initial stage, she requested reconsideration. When her claim was denied again on reconsideration, she had the right

to request a hearing before an ALJ. 20 C.F.R. § 416.1407. She did not request a hearing. The reconsideration determination became binding for the purposes of administrative finality, or *res judicata*, because Mrs. Chamberlin did not request an administrative hearing within 60 days after receiving notice of the adverse determination. 20 C.F.R. §§ 416.1421, 416.1433. The principle of *res judicata* applies to findings and decisions on the merits which become final as a result of a claimant's failure to seek administrative review after notice of an adverse decision. *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985). Administrative *res judicata* applies even if the claimant did not have a hearing before an ALJ, if the claimant failed to pursue administrative appeals and no new facts are presented in the later application. *Id.*, *Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir. 1982). When a claimant reapplies for disability benefits under the Social Security Act after a previous denial, the earlier denial precludes the claimant from arguing that he was disabled during the period covered by the earlier decision. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); *Taylor v. Heckler*, 765 F.2d at 875.

The Commissioner may, however, reopen or revise an otherwise final and binding determination within two years on a showing of good cause. 20 C.F.R. §§ 404.988(b); 416.1488(b). Mrs. Chamberlin did not seek to reopen or attempt to show good cause within two years; her new applications come nearly seven years after the denial of her previous application. Aside from that, the Commissioner's decision whether to reopen a previous application is not a final decision of the Commissioner within the meaning of 42 U.S.C. § 405(g). For this reason, the court generally does not have jurisdiction to review an ALJ's refusal to reopen a previous application. *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008); *Udd v. Massanari*, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)).

Despite this general rule, courts have jurisdiction to consider any colorable constitutional claim that the Commissioner's refusal to reopen a previous application denied the claimant a meaningful opportunity to be heard or to seek review of the previous determination. *Klemm*, 543 F.3d at 1144-45, *Udd*, 245 F.3d at 1199; *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997). A claimant may assert a colorable constitutional claim by alleging she could not obtain review because she suffered from a mental impairment and was not represented by counsel, unless such allegations are purely conclusory and unsupported by facts. *Klemm*, 543 F.3d at 1145; *Udd*, 245 F.3d at 1099. The allegation of a mental impairment which satisfies the good cause provisions of Social Security Ruling ("SSR") 91-5p, 1991 WL 208067, presents a colorable constitutional claim which the court may review. *Udd*, 245 F.3d at 1099; *Evans*, 110 F.3d 1483-84. SSR 91-5p provides that a claimant establishes good cause for failure to seek review when the evidence establishes that she lacked the mental capacity to understand the procedures for requesting review. Mrs. Chamberlin alleged she suffered from a mental impairment and lacked representation at the time her claim was denied in February 1998. She presented evidence and argument and the ALJ addressed her claim of incapacity. Admin. R. 37-38. Because her allegations are not purely conclusory, Mrs. Chamberlin has presented a colorable constitutional due process claim which this court may consider on the merits. *Udd*, 245 F.3d at 1099; *Evans*, 110 F.3d at 1483.

Mrs. Chamberlin contends the evidence showed she was not mentally capable of requesting timely review in February 1998 due to a longstanding cognitive disorder, bipolar disorder, and PTSD. She argues that her cognitive disorder resulted in short term memory loss. David Gostnell, Ph.D., found her short term memory intact, although there was some suggestion of limitations in remote memory. Admin. R. 226. Molly McKenna, Ph.D., administered formal testing and found

Mrs. Chamberlin's memory average to low average, with a relative weakness in verbal learning. Mrs. Chamberlin compensated for this in her activities of daily living and Dr. McKenna opined she would be able to do so in a work setting. *Id.* at 274-75. Dr. Clayton testified that Mrs. Chamberlin's cognitive disorder was limited to the verbal learning deficits identified by Dr. McKenna, which were in the mild to moderate range and would not preclude work involving simple routine tasks. *Id.* at 497, 501. With respect to PTSD, Dr. Clayton testified that it was not present before August 2005. *Id.* at 497. This evidence does not suggest Mrs. Chamberlin lacked the mental capacity to request an administrative hearing in February 1998.

Mrs. Chamberlin's most debilitating symptoms result from a bipolar affective disorder, but the record reflects that it is generally well controlled when she is compliant with mood stabilizing medications. The record shows that she was hospitalized for psychiatric symptoms in January 1997, three weeks after the birth of her son. She reportedly had discontinued her medications while pregnant. She was discharged three days later without psychiatric symptoms after starting a medication regimen with Depakote. Admin. R. 176-82, 337-40, 343. She was hospitalized again in October 2001, in a manic and confused state. She had been started on Depakote the day before admission, suggesting she had been off medications previously. *Id.* at 197. She made rapid improvement on Depakote, and was discharged without psychiatric symptoms after three days. *Id.* at 193. Mrs. Chamberlin told a psychiatrist her hospitalizations had resulted from running out of medication or not taking it; she repeatedly and consistently reported to treating sources that she did well as long as she maintained a therapeutic level of Depakote. *Id.* at 219. Similarly, she told Dr. McKenna she did not experience severe episodes or require hospitalizations when compliant with her medications. *Id.* at 272.

As the ALJ correctly observed, there is no evidence that Mrs. Chamberlin experienced psychiatric symptoms between January 1997 and October 2001. *Id.* at 37-38. During this time, she was able without representation to file an application for Supplemental Security Income and understand the instructions for seeking reconsideration after the initial denial. The ALJ reasonably inferred that Mrs. Chamberlin's mental condition appears to have been stable on medications at the time her previous application was denied in February 1998. *Id.* at 38. Accordingly, the ALJ concluded, she had not shown good cause for failing to request review. *Id.*

Mrs. Chamberlin relies on the lay witness statements provided by her mother, Mary Wright. Ms. Wright, however, did not describe difficulties in February 1998 suggesting that Mrs. Chamberlin was incapable of understanding how to seek review of the previous determination. Ms. Wright described periods of psychiatric distress in 1997 and 2001, but said Mrs. Chamberlin was stable and did fairly well with ordinary life stresses at other times. *Id.* at 134, 162-63. Accordingly, Ms. Wright's statements do not support Mrs. Chamberlin assertion of good cause for failing to request review.

The record demonstrates that the ALJ considered and weighed the evidence in reaching her determination that Mrs. Chamberlin failed to demonstrate good cause for the purposes of SSR 91-5p. That determination is supported by substantial evidence. Accordingly, the ALJ's refusal to reopen was not a violation of due process. *Evans*, 110 F.3d at 1483, 1484. Because the ALJ did not err in refusing to reopen, the Commissioner's findings and decision on the merits from the previous denial preclude Mrs. Chamberlin from arguing that she was disabled during the period covered by the earlier decision. *Lester*, 81 F.3d at 827; *Taylor*, 765 F.2d at 875.

Mrs. Chamberlin, nonetheless, contends the previous decision does not bar her from arguing she was disabled during the time it covered because it was an application under Title XVI alone and the present claim includes a concurrent Title II application. It is true, as the Appeals Council noted, that the ALJ erroneously stated her previous application sought Disability Insurance Benefits under Title II when, in fact, it was an application for Supplemental Security Income under Title XVI. Admin. R. 8. The error was immaterial to the ALJ's analysis of the effect of the previous decision. An erroneous finding that is immaterial is harmless. If the ALJ's determination remains supported despite the error, it is immaterial and harmless. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

The regulations governing administrative finality are identical under Title II and Title XVI. The only exception is that the Commissioner may reopen a previous determination on a Title II application within four years instead of the two-year period under Title XVI. 20 C.F.R. §§ 404.988, 416.1488. The ALJ's error gave Mrs. Chamberlin the benefit of the longer deadline. This had no impact on the analysis, however, because Mrs. Chamberlin did not seek to reopen for more than six years.

Similarly, the five-step disability determination process and the factual determinations necessary to evaluate claims of disability under Title XVI are identical to those under Title II. 20 C.F.R. §§ 404.1520, 416.920. *See Bowen v. Yuckert*, 482 U.S. at 140. Insofar as Mrs. Chamberlin's current applications relate to the period covered by the previous decision, they raise the same issues on the same facts as the previous application. This is so regardless that one of the current applications is under Title II instead of Title XVI. An ALJ may properly refuse to consider any issue that was resolved in a previous determination about a claimant's rights on the same facts and

on the same issue, when the previous determination has become final by administrative or judicial action. 20 C.F.R. §§ 404.957(c)(1), 416.1467(c)(1). An ALJ need not consider such issues again, even if the previous determination arose under a different title of the Social Security Act; the ALJ may accept the factual findings made in the previous determination unless there are reasons to believe it was wrong. 20 C.F.R. §§ 404.950(f), 416.1450(f). Accordingly, the ALJ did not need to reconsider the merits of the factual determination that Mrs. Chamberlin was not disabled during the period covered by the previous decision.

### III.   Medical Expert Testimony

The ALJ elicited testimony from Dr. Clayton for the purpose of determining whether Mrs. Chamberlin satisfied the criteria for any of the presumptively disabling mental conditions enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). Admin. R. 34. A claimant will be presumed to be disabled without further inquiry if she meets the criteria for a listing. *Yuckert*, 482 US at 140-41; 20 CFR §§ 404.1520(d), 416.920(d). Each listed condition includes a set of diagnostic medical findings in paragraph A and a set of impairment-related functional limitations in paragraph B. An individual meets the criteria of a listed impairment when the criteria of both paragraphs A and B are satisfied. Listing of Impairments § 12.00(A).

There is no dispute that Mrs. Chamberlin satisfied the A criteria for listings 12.02, 12.04, and 12.06. Dr. Clayton said the medical records supported diagnostic findings for a cognitive disorder, a bipolar affective disorder, and PTSD. Admin. R. 497. These are the medically determinable impairments identified by the ALJ. *Id.* at 32, 34.

The B criteria, which are identical for the three listings, are assessments of the severity of impairment in four broad categories of function. The B criteria are satisfied by showing any two of

the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. For the decompensation category, the episodes must occur three times in a year or with an average frequency of once every four months and each episode must persist for two weeks. Listing of Impairments § 12.00(C).

      She said Mrs. Chamberlin had mild limitations in activities of daily living and mild to moderate limitations in social functioning. Admin. R. 499. She opined Mrs. Chamberlin's limitations in concentration, persistence, or pace, were marked "at least at times" during the period from 1996 to 2001. *Id.* at 498. Dr. Clayton opined that Mrs. Chamberlin's difficulties in concentration, persistence, or pace, were no more than moderate thereafter. *Id.* Regarding decompensation, Dr. Clayton testified that Mrs. Chamberlin had an episode in April 1996 which was not documented in the record and a second episode in January 1997. The record did not support any other episodes of sufficient duration. Accordingly, Dr. Clayton did not identify episodes of decompensation meeting the duration and frequency requirements of the B criteria. Her testimony is consistent with the ALJ's conclusion that Mrs. Chamberlin did not meet the B criteria for any listing. *Id.* at 35. Indeed, Dr. Clayton testified that Mrs. Chamberlin did not meet any of the listings. *Id.* at 498. Despite this, Mrs. Chamberlin contends Dr. Clayton's testimony indicates Mrs. Chamberlin met listing 12.04 in 1997. Mrs. Chamberlin contends the ALJ erred by giving no weight to Dr. Clayton's testimony as it related to the period covered by the previous decision.

      Dr. Clayton testified based on her review of the medical evidence. She did not treat or examine Mrs. Chamberlin, but heard her testimony and reviewed the lay witness statements submitted by Ms. Wright. The opinions of such reviewing sources are given weight only to the

extent they are supported by the record and consistent with the record as a whole. An ALJ is not bound by their findings, but may not ignore their opinions and must explain the weight given to the opinions in their decision. 20 C.F.R. §§ 404.1527(f); 416.927(f).

Although the ALJ agreed with much of Dr. Clayton's testimony, she gave no weight to her opinion that Mrs. Chamberlin had marked difficulties with concentration, persistence, or pace during the period from 1997 to 2001. *Id.* at 34. This was in part because the testimony related to the time period covered by the previous decision. The ALJ gave additional, more cogent reasons as well. The ALJ found Dr. Clayton's testimony vague and ambiguous regarding the times and duration of time Mrs. Chamberlin experienced these marked limitations. *Id.* at 34, 38. When asked to specify when the marked limitations prevailed, Dr. Clayton identified only two hospitalizations, in January 1997 and October 2001. *Id.* at 499-500. The ALJ pointed out the two occasions represented a very small portion of the time in this period and reflected times when Mrs. Chamberlin was not taking therapeutic doses of mood stabilizing medications. The ALJ also noted there was no medical evidence from the period between the two hospitalizations to support Dr. Clayton's testimony. Based on the absence of medical evidence from the period, the ALJ inferred Dr. Clayton relied on unreliable anecdotal statements of Ms. Wright and Mrs. Chamberlin. The ALJ relied on evaluations by other psychologists and statements in progress notes of treating sources indicating that Mrs. Chamberlin functions well when compliant with medications. *Id*. at 34, 37-38.

The ALJ did not ignore Dr. Clayton's opinion. She explained why she found Dr. Clayton's opinion unsupported by the record and entitled to no weight. 20 C.F.R. §§ 404.1527(f); 416.927(f). Her inferences are supported by substantial evidence in the record as a whole and will not be overturned. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

Mrs. Chamberlin contends SSR 96-6p required the ALJ to obtain an updated opinion from Dr. Clayton based on mental health records from 2007 which she had not seen when she testified at the hearing. SSR 96-6p requires an ALJ to obtain an updated opinion from a medical expert when additional evidence is received which the medical expert has not seen and which, in the opinion of the ALJ, may change the medical expert's finding that claimant's impairment does not meet a listing. 1996 WL 374180 at *4. The ALJ received the additional mental health care notes and found they included statements from Mrs. Chamberlin that she continued to do well on Depakote, and assessments of her global functioning in a range consistent with mild limitations. Admin. R. 38. Because this evidence did not include any support for persistent marked impairment of function or episodes of decompensation, the ALJ could not be expected to think an updated opinion from Dr. Clayton was required under SSR 96-6p.

## **CONCLUSION**

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision.

DATED this   8th   day of February, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge